**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BARBARA J. PARENZAN,** | : | **Civil No.  3:16-CV-489** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN W. COLVIN** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

## I.    Introduction

In this Social Security Appeal we are called upon to review an Administrative Law Judge's (ALJ) assessment of competing medical opinions. We are asked to conduct this evaluation in a setting where an ALJ seems to have discounted, in whole or in part, all of the medical opinions she received, and appears instead to have fashioned a residual functional capacity (RFC) for the claimant which materially departs from all of the medical opinion evidence.

There were three such medical opinions in this case:  two from non-treating sources, and one from the plaintiff's treating physician.  Ms. Parenzan's treating physician, Dr. Kraynak, submitted a series of medical statements which opined that she was disabled due to the combined effects of multiple medical impairments.

1

(Tr.  336-43, 529-34.)  The ALJ gave these treating source opinions "little weight" in reaching a decision.  (Tr. 27.)

A second non-treating, non-examining medical source, Dr. Besen, concluded that Parenzan was capable of performing medium work and could lift and carry between 21-50 or 51-100 pounds occasionally, as well as sitting for 4 hours and standing for 3 hours during a work day.  While the ALJ seemed to disagree with many of these exertional  limits found by Dr. Besen, the ALJ assigned this opinion "only moderate weight overall."  (Tr. 27.)

The ALJ then examined a third medical opinion from a non-treating source, Dr. Chimahosky.  Dr. Chimahosky opined that Parenzan could lift 21-50 pounds frequently, and 51-100 pounds occasionally, sit for 3 hours, stand for 1 hour, and walk for 4 hours during an 8 hour work day.  The ALJ found that this opinion, which in many respects was very similar to the opinion of Dr. Besen, was "internally inconsistent and inconsistent with the longitudinal record."  (Tr. 27.) The ALJ then enigmatically concluded that:  "Overall, this assessment is afforded only some weight."

Having decided that the various medical opinions rendered in this case only deserved "little", "moderate" or "some" weight, the ALJ then crafted an RFC for

the plaintiff which varied in material ways from all of these medical opinions and

found that Parenzan had the residual functional capacity:

> [T]o perform light work ... [She] can lift/carry 10 pounds frequently
> and up to 20 pounds occasionally.  She can sit, stand and walk 6 hours
> in each 8-hour work day.  She is limited to occupations that require no
> more than occasional postural maneuvers, such as balancing,
> stooping, kneeling, crouching, and climbing on ramps and stairs.  She
> must avoid occupations that require climbing on ladders, ropes, and
> scaffolds or crawling.  She is limited to occupations that require no
> more than occasional pushing and pulling with the upper extremities
> to include the operation of hand levers.  She must avoid occupations
> that require overhead reaching with the upper extremities to include
> overhead work.  She must avoid concentrated prolonged exposure to
> fumes, odors, dusts, gases, chemical irritants, environments with poor
> ventilation, cold temperature extremes, extreme dampness and
> humidity, vibration, and exposure to hazards such as dangerous
> machinery and unprotected heights.  Mentally, she is limited to
> occupations requiring no more than simple, routine tasks, not
> performed in a fast-paced production environment, involving only
> simple, work-related decision, and in general, relatively few work
> place changes with no more than occasional interaction with
> supervisors, coworkers and members of the general public.

(Tr. 24.)

This RFC assessment, while detailed, conflicted with all medical source

opinions in this case in ways that cannot be readily discerned or understood from

the record before us.  Therefore, for the reasons set forth below, since the RFC

assessment in this case seems unmoored to any medical opinion evidence, and

appears to be based upon a rejection of all medical opinions in this case, it is

recommended that this case be remanded for further consideration and reconciliation of that medical evidence.

## II.   **Statement of Facts and of the Case**

Barbara Parenzan was born in December 1967 and was 46 years old on the date of the ALJ's decision in this case.  (Tr, 201, 203, 23.)  As such, Parenzan was considered a considered a "younger individual" by Social Security regulations.  20 C.F.R.  §§  404.1563,  416.963.    Parenzan  had  gone  beyond  high  school educationally, (Tr. 247, 28), and had previously worked as a Laborer and a Packaging Machine Operator.  (Tr. 235-42, 247, 73, 28.)        On  February  11 and 22, 2013, Parenzan filed applications for DIB and SSI benefits under Titles II and XVI of the Social Security Act.  (Tr. 188-208.)  Parenzan's applications were denied at the initial level on May 22, 2013, and Parenzan requested a hearing before an administrative law judge on June 27, 2013.  (Tr. 145-148; 149-53.)  That hearing was conducted on July 17, 2014.  (Tr.36-80.)

At the time of this hearing, there were three contrasting medical opinions in the administrative record for the ALJ to consider.  Two of these opinions came from non-treating sources, the third opinion was provided by Parenzan's treating physician, Dr. Kraynak.

4

Parenzan's treating physician, Raymond J. Kraynak, D.O., provided two Medical Source Statements dated February 21, 2013, (Tr. 336-40.), and February 7, 2014.  (Tr. 529-34.)  In these treating physician medical source statements, Dr. Kraynak stated that Parenzan was severely limited in her ability to perform work related activities.  Specifically, in both Statements, Dr. Kraynak limited Parenzan to lifting less than 10 pounds occasionally, as well as sitting, standing, and walking for a combined total of less than 8 hours per workday.  (Tr. 336-37, 529-30.)  He also opined that Parenzan was severely limited with respect to reaching, handling, and fingering.  (Tr. 337, 531.)

In contrast, two non-treating sources arrived at markedly different assessments of Parenzan's functional capacities.  At the outset, a non-treating, non-examining medical source, Dr. Besen, concluded that Parenzan was capable of performing medium work and could lift and carry between 21-50 or 51-100 pounds occasionally, as well as sitting for 4 hours and standing for 3 hours during a work day.  (Tr. 597-603.)  A second non-treating, but examining source, Dr. Chimahosky opined that Parenzan could lift 21-50 pounds frequently, and 51-100 pounds occasionally, sit for 3 hours, stand for 1 hour, and walk for 4 hours during an 8 hour work day.  (Tr. 345-352.)

5

With the medical opinion evidence cast in this starkly contrasting fashion, on September 29, 2014, the ALJ issued a decision finding that Parenzan was not disabled and was not entitled to benefits. (Tr. 15-35.) At Step 1 of the sequential analysis applicable to these social security claims, the ALJ found that Parzenan met the insured status requirements of the Act. (Tr. 20.) At Step 2 of this process the ALJ concluded that Parzenan suffered from the following severe ailments: bilateral carpal tunnel syndrome, status-post release on the left, Degenerative Disc Disease ("DDD") of the cervical spine with radiculopathy, DDD of the lumbar spine, Chronic Obstructive Pulmonary Disease ("COPD"), osteoarthritis of the right thumb, cystic lesion of the left wrist, Depressive Disorder/Mood Disorder, Anxiety Disorder, amphetamine dependence, and alcohol abuse. (Tr. 21.) At Steps 3 and 4, the ALJ further concluded that none of these ailments met the requirements of a listing under Social Security regulations, and that Parzenan could not perform her past work. (Tr. 22-24, 26.) These findings, in turn, set the stage for the residual function assessment by the ALJ which lies at the heart of this appeal.

In reaching this residual functional capacity assessment, it appears that the ALJ ultimately rejected material aspects of all of the competing medical opinions that were before the ALJ, and instead fashioned her own RFC for Parenzan.

Moreover, the weight assigned to these opinions actually seemed to diminish as the physicians had greater experience and contact with Parenzan.  For example, with respect to Dr. Besen, the non-examining, non-treating source, the ALJ seemed discount many of these exertional  findings made by the doctor regarding Parenzan ability to lift and carry, but then assigned this opinion "moderate weight overall." (Tr. 27.)  When the ALJ turned to the opinion of the non-treating source who had actually examined Parenzan, Dr. Chimahosky, the ALJ found that this opinion, which in many respects was very similar to the opinion of Dr. Besen, was "internally inconsistent and inconsistent with the longitudinal record."  (Tr. 27.) Yet, the ALJ then concluded that:  "Overall, this assessment is afforded only some weight."  (Id.)  As for the multiple treating source opinions of Dr. Kraynak,  who had treated the plaintiff for an extended period and limited Parenzan to lifting less than 10 pounds occasionally as well as sitting, standing, and walking for a combined total of less than 8 hours per workday, the ALJ gave these treating source opinions "little weight."  (Tr. 27.)

Having essentially found all of these expert opinions to be flawed in some significant ways, the ALJ then framed her own residual functional capacity assessment for Parenzan.  This assessment differed significantly from all of the

medical opinions presented to the ALJ in ways that were not fully explained in the opinion itself, and provided that Parenzan could:

> [P]erform light work ... [She] can lift/carry 10 pounds frequently and up to 20 pounds occasionally.  She can sit, stand and walk 6 hours in each 8-hour work day.  She is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, and climbing on ramps and stairs.  She must avoid occupations that require climbing on ladders, ropes, and scaffolds or crawling.  She is limited to occupations that require no more than occasional pushing and pulling with the upper extremities to include the operation of hand levers.  She must avoid occupations that require overhead reaching with the upper extremities to include overhead work.  She must avoid concentrated prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, cold temperature extremes, extreme dampness and humidity, vibration, and exposure to hazards such as dangerous machinery and unprotected heights.

 (Tr. 24.)

Based upon this finding that Parenzan could perform light work, a finding that no medical source endorsed and a finding that conflicted with every fully formed medical opinion in this case, the ALJ held that there were substantial jobs that Parenzan could perform in the national economy and concluded that she was not disabled.

This appeal followed.  (Doc. 1)  This case is fully briefed by the parties, (Docs. 13-15) and is, therefore, ripe for resolution.  Since the RFC assessment in this case is not grounded in any medical opinion evidence, appears to be based

upon a rejection of all medical opinions in this case, and seems to substitute the ALJ's subjective impressions for this medical evidence, for the reasons set forth below it is recommended that this case be remanded for further consideration and reconciliation of this medical evidence.

## III.  Discussion

### A.    Substantial Evidence Review – the Role of This Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately

developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

**B.**      **Initial Burdens of Proof , Persuasion and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a).   To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.   42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.   20 C.F.R. §416.920(a).   Under this process, the ALJ must sequentially determine:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education,

work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age,

education, work experience and RFC.  20 C.F.R. §416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  <u>Id</u>. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec</u>., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.   <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence</u>

The Commissioner's regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do

despite impairments(s), and [a claimant's] physical or mental restrictions.   20 C.F.R. §404.1527(a)(2).   Regardless of its source, the ALJ is required to evaluate every medical opinion received.   20 C.F.R. §404.1527(c).

In deciding what weight to accord to competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c).   "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."   SSR 96-6p, 1996 WL 374180 at *2.   Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight.   See 20 C.F.R. §404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources...");   20 C.F.R. §404.1502 (defining treating source).   Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight.   20 C.F.R. §§04.1527(c)(2);  see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where

applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.  20 C.F.R. §404.1527(c).

At the initial level of administrative review, State agency medical and psychological consultants may act as adjudicators.  See SSR 96-5p, 1996 WL 374183 at *4.  As such, they do not express opinions; they make findings of fact that become part of the determination.  Id.  However, 20 C.F.R. §404.1527(e) provides that at the ALJ and Appeals Council levels of the administrative review process, findings by nonexamining State agency medical and psychological consultants should be evaluated as medical opinion evidence.  As such, ALJs must consider these opinions as expert opinion evidence by nonexamining physicians and must address these opinions in their decisions.  SSR 96-5p, 1996 WL 374183 at *6.  Opinions by State agency consultants can be given weight "only insofar as they are supported by evidence in the case record."  SSR 96-6p, 1996 WL 374180 at *2.  In appropriate circumstances, opinions from nonexamining State agency

medical consultants may be entitled to greater weight than the opinions of treating or examining sources. Id. at *3.

Furthermore, as discussed above, it is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. See 20 C.F.R. §404.1527(c)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(quoting Mason, 994 F.2d at 1066)); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

Oftentimes, as in this case, an ALJ must evaluate a number of medical opinions tendered by both treating and non-treating sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, "[w]here, . . . , the opinion of a treating

16

physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty to choose which medical opinions deserve greater weight.

> In making this assessment of medical opinion evidence:
>
> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015); Turner v. Colvin, 964 F.Supp.2d 21, 29 (D.D.C.2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

It is equally clear, however, that an ALJ may not unilaterally reject *all* medical opinions in favor of the ALJ's own subjective impressions. Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016) citing Thanh Tam Vo v. Colvin, No. 1:14–CV–00541–GBC, 2015 WL 5514981, at *4 (M.D.Pa. Sept. 15, 2015)

(remanding where ALJ completely rejected all medical opinions, even the one that supported the ALJ's RFC). Thus,

> In a slew of decisions, the Third Circuit holds that no reasonable mind would find the ALJ's evidence to be adequate when the ALJ rejects every medical opinion in the record with only lay reinterpretation of medical evidence. See Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Doak v. Heckler, 790 F.2d 26, 29–30 (3d Cir.1986); Ferguson v. Schweiker, 765 F.2d 31, 37, 36–37 (3d Cir.1985); Kent v. Schweiker, 710 F.2d 110, 115 (3d Cir.1983); Van Horn v. Schweiker, 717 F.2d 871, 874 (3d Cir.1983); Kelly v. R.R. Ret. Bd., 625 F.2d 486, 494 (3d Cir.1980); Rossi v. Califano, 602 F.2d 55, 58–59, (3d Cir.1979); Fowler v. Califano, 596 F.2d 600, 603 (3d Cir.1979); Gober v. Matthews, 574 F.2d 772, 777 (3d Cir.1978). These cases also recognize the special deference owed to medical opinions from treating sources ("treating source rule")

> Burns v. Colvin, 156 F. Supp. 3d 579, 583 (M.D. Pa. 2016).

In short, "rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant. See Doak v. Heckler, 790 F.2d 26, 29 (3d Cir.1986) ('No physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence.')." Ennis v. Astrue, No. 4:11-CV-01788, 2013 WL 74375, at *6 (M.D. Pa. Jan. 4, 2013)(Munley, J.)

18

There is a necessary corollary to this principle, which generally prohibits an ALJ from rejecting a medical opinion in favor of the ALJ's own lay interpretation of the medical evidence.  Where, as here, an ALJ is confronted with an array of medical opinions, in the absence of some compelling and clear factual narrative, it is error to reject *all* of these opinions in favor of some lay interpretation of the medical proof.  <u>See e.g.</u> <u>Doak v. Heckler</u>, 790 F.2d 26, 29–30 (3d Cir.1986) (rejecting both treating physician and non-treating source opinions); <u>Burns v. Colvin</u>, 156 F. Supp. 3d 579, 583 (M.D. Pa. 2016)(same).

### D.    <u>A Remand is Necessary Here to Further Assess the Medical Evidence</u>

Judged against these legal guideposts, it is submitted that a remand is appropriate here to allow for further consideration of the medical evidence.  In this case, the ALJ was presented with three different medical opinions:  two from non-treating sources and a third from Parzenan's treating physician, Dr. Kraynak.  The non-treating sources opined that Parzenan could perform work that involved a medium level of exertion, and could occasionally lift or carry as much as 51-100 pounds; Dr. Kraynak asserted that she was disabled, and could lift no more than 10 pounds.  Fairly construed, the ALJ's decision rejects all of these medical findings,

and carves out a separate path, finding that Parzenan can perform light work with occasional lifting of 20 pounds.

We cannot discern from the record before us how the ALJ concluded that all medical opinions should be discounted.  Nor can we ascertain from the analysis conducted by the ALJ how that decision-maker was able to determine a residual functional capacity which differed from the medical findings of all three of these physicians.  We also note that the opinion itself appears to substitute the ALJ's own lay evaluation for the opinion of the treating physician, a course this Court has criticized in the past.  For example, in a factually similar case, Ennis v. Astrue, No. 4:11-CV-01788, 2013 WL 74375, at *5 (M.D. Pa. Jan. 4, 2013).  Judge Munley held that an administrative law judge erred in rejecting the opinion of Dr. Kraynak, a treating physician, in favor of finding that the claimant could perform light work while failing to identify contrary medical opinions which indicated that the claimant could engage in the lifting and carrying requirements of light work on a full-time basis.

Further, there are a series of other concerns regarding the treatment of this medical evidence by the ALJ which, in combination, call for further consideration of this case.  First, the ALJ's assessment of these opinions, on its face, seems to run counter to the guidance which controls examining of medical opinion

evidence.   That guidance "provide[s] progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."   SSR 96-6p, 1996 WL 374180 at *2.   In short, this guidance generally affords greater weight to the opinions of doctors who know the claimant best.   Yet, the analysis here places the greatest weight on the least informed source, the non-treating, non-examining physician, whose opinion is given "moderate" weight.   The non-treating but examining physician's opinion in then given "some" weight, while the actual treating physician's opinion is only accorded "little weight" by the ALJ.   This inversion of the normal hierarchy of medical opinions is not sufficiently explained in our view to permit a finding that substantial evidence supports this disability determination.

Moreover, when one examines the content of the medical opinions in terms of assessing Parzenan's exertional limitations, the inconsistency in the treatment of these opinions is set in even sharper relief.   The non-treating sources that are given the greater weight by the ALJ have opined that Parzenan can lift or carry as much as 100 pounds occasionally.   In contrast, the treating physician limits Parzenan to lifting a fraction of this weight, 10 pounds, on an occasional basis.   While the ALJ's decision indicates that the non-treating sources are more accurate and credible, the ALJ's own RFC assessment more closely approximates Dr.

21

Kraynak's opinion, and indicates that Parzenan can list up to 20 pounds occasionally. The disparity between the weight that the ALJ asserts these competing opinions deserve, and the actual RFC fashioned by the ALJ is not sufficiently explained to allow for an informed assessment of the accuracy of this residual functional capacity determination, a determination which deviates from all of the medical opinions in this case and formed the lynchpin for the adverse ruling in Parzenan's case. Given these unanswered questions and inconsistencies, and mindful of the fact that in the absence of some compelling and clear factual narrative it is error for an ALJ to reject *all* of the medical opinions in a case opinions in favor of some lay interpretation of the medical proof, see e.g., Doak v. Heckler, 790 F.2d 26, 29–30 (3d Cir.1986); Burns v. Colvin, 156 F. Supp. 3d 579, 583 (M.D. Pa. 2016), we recommend that this case be remanded for further consideration and reconciliation of this medical evidence.

Yet, while case law calls for a remand and further proceedings by the ALJ in this case assessing this claim, nothing in our opinion should be construed as suggesting what the outcome of that final and full analysis should be. Rather, that final assessment of the evidence must await a thorough consideration and development of this evidence. Further, because we find this basis for remand, we need not address the remaining arguments in this appeal. To the extent that any

22

other error may exist, it can be remedied on remand following a new administrative hearing.

## IV.   <u>Recommendation</u>

Accordingly, because we find that the ALJ's decision is not supported by substantial evidence, IT IS RECOMMENDED that the plaintiff's request for a new administrative hearing should be GRANTED, the final decision of the Commissioner denying this claim should be vacated, and this case should be remanded to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. §405(g).  IT IS FURTHER RECOMMENDED that final judgment should be entered in favor of the plaintiff and against the Commissioner of Social Security.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The

judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this 13th day of February, 2017.

 *s/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge