IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA J. PARENZAN,<br>    **Plaintiff** | : | No. 3:16cv489 |
| | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| NANCY A. BERRYHILL,[1]<br>**Acting Commissioner of the**<br>**Social Security Administration,**<br>    **Defendant** | :<br>:<br>:<br>: | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court for disposition is Magistrate Judge Martin C. Carlson's report and recommendation (hereinafter "R&R"). (Doc. 17). The R&R proposes granting Plaintiff Barbara J. Parenzan's (hereinafter "plaintiff" or "claimant") appeal of Defendant Social Security Administration's (hereinafter "defendant") decision denying her application

---

[1] When plaintiff filed this action, Carolyn W. Colvin was the Commissioner of Social Security. Accordingly, plaintiff named her as the defendant in her official capacity. Since then, however, Colvin left her position as Commissioner. Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. See OFFICIAL SOCIAL SECURITY WEBSITE, http://blog.ssa.gov/meet-our-new-acting-commissioner/ (last accessed March 30, 2017).
   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit. FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.")

for disability insurance and supplemental security income benefits.[2]  The defendant filed objections to the R&R (Doc. 18), and they are ripe for disposition.

**Background**

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on February 11, 2013.  (Doc. 10-2, Admin. Record (hereinafter "R.") at 18).  Plaintiff also protectively filed a Title XVI application for supplemental security income on February 22, 2013.  (R. at 17).  In both applications, plaintiff alleges her disability began on March 31, 2011, due to: bilateral carpal tunnel syndrome, status-post release on the left; degenerative disc disease (hereinafter "DDD") of the cervical spine with radiculopathy; DDD of the lumbar spine, chronic obstructive pulmonary

---

[2]  Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes.  42 U.S.C. §§ 415(a) and 416(i)(1).  Here, plaintiff's earnings records establish that she has acquired sufficient quarters of coverage to remain insured through September 30,  2016.  (Doc. 10-2, Admin. Record (hereinafter "R.") at 20).
    Supplemental security income (hereinafter "SSI") is a federal income supplement program funded by general tax revenues (not social security taxes).  42 U.S.C. § 1381.  It is designed to help the aged, blind or disabled individuals who have little or no income.  42 U.S.C. § 1381a.  Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits.  42 U.S.C. § 1382.

2

disease; osteoarthritis of the right thumb; cystic lesion of the left wrist; depressive disorder/mood disorder; anxiety disorder; amphetamine dependence; and alcohol abuse.[3]  (R. at 21).

The Bureau of Disability Determination of the local Social Security office initially denied plaintiff's claim for benefits on May 22, 2013.  (R. at 18).  Plaintiff then requested a hearing before an Administrative Law Judge (hereinafter "ALJ").  (Id.)  ALJ Michele Stolls held a hearing on July 17, 2014, in Wilkes-Barre, Pennsylvania.  (R. at 36-80).  An impartial vocational expert, Gerald Keating, appeared at the hearing, as did the plaintiff.  (Id.)

On September 29, 2014, the ALJ denied plaintiff's application for disability insurance and supplemental security income benefits on the basis that plaintiff is not disabled under the Social Security Act.  (R. at 15-30). Plaintiff then filed for review before the Social Security Administration Office of Disability Adjudication and Review Appeals Council.  (R. at 12). The Appeals Council denied the request for review on January 19, 2016. (R. at

---

[3]  Plaintiff worked as a laborer and packing machine operator before the alleged onset of her disability.  (R. at 28).

1-5).  Thus, the ALJ's decision became the final decision of the Commissioner of Social Security in plaintiff's case.[4]  (R. at 2).

Subsequently, plaintiff instituted the instant action to challenge the denial of benefits.[5]  (Doc. 1, Compl.).  She argues that substantial evidence fails to support the ALJ's decision.  On February 13, 2017, Magistrate Judge Carlson recommended granting plaintiff's appeal.  (Doc. 17).  The defendant filed objections to the R&R (Doc. 18), and they are ripe for disposition.

**Jurisdiction**

The court has federal question jurisdiction over this Social Security Administration appeal.  See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section

---

[4]  The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless a claimant files an action in federal district court within sixty (60) days after receiving notice of the Appeals Council's action.  20 C.F.R. § 404.981.

[5]  Under the Local Rules of Court, "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." L.R. 83.40.1.

4

405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .").

**Standard of Review**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report against which objections are made.  28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983).  The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  The district court judge may

5

also receive further evidence or recommit the matter to the magistrate judge with instructions.  Id.

In reviewing a Social Security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision.  See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  "[S]ubstantial evidence has been defined as 'more than a mere scintilla.'"  Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion.  See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute their own conclusions for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when the ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently).  In an adequately developed factual record, substantial evidence may be

6

"something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). Thus, a reviewing court must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Discussion**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

    The Commissioner evaluates disability insurance and supplemental security income claims with a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). This analysis requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity; (2) has an impairment, or combination of impairments, that is severe; (3) has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment"; (4) has the "residual functional capacity" to return to his or her past work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4).

Applying the five-step sequential analysis to the instant case, the ALJ found at Step 1 that plaintiff had not engaged in substantial gainful activity since March 31, 2011. (R. at 20). At Step 2, she found that plaintiff has the following severe impairments: bilateral carpal tunnel syndrome, status-post release on the left; DDD of the cervical spine with radiculopathy; DDD of the lumbar spine, chronic obstructive pulmonary disease; osteoarthritis of the right thumb; cystic lesion of the left wrist; depressive disorder/mood disorder; anxiety disorder; amphetamine dependence; and alcohol abuse. (R. at 21). At Step 3, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. at 22).

The ALJ next determined that plaintiff has the residual functional capacity (hereinafter "RFC") to:

> Perform light work . . . . Claimant can lift/carry 10 pounds frequently and up to 20 pounds occasionally. She can sit, stand, and walk 6 hours in an 8-hour workday. She is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, and climbing on ramps and stairs. She must avoid occupations that require climbing on ladders, ropes, and scaffolds or crawling. She is limited to occupations that require no more than occasional pushing and pulling with the upper extremities to include the operation of hand levers. She must avoid occupations that require overhead reaching with the

9

> upper extremities to include overhead work. She must avoid concentrated prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, cold temperature extremes, extreme dampness and humidity, vibration, and exposure to hazards such as dangerous machinery and unprotected heights. Mentally, she is limited to occupations requiring no more than simple, routine tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes with no more than occasional interaction with supervisors, coworkers and members of the general public.

(R. at 24). The ALJ then proceeded to Step 4 of the sequential evaluation and received testimony from an impartial vocational expert (hereinafter "VE"). The VE testified that plaintiff cannot perform her past relevant work as a laborer and packing machine operator. (R. at 28).

Finally, at Step 5, the ALJ determined that plaintiff could still perform other work that exists in significant numbers in the national economy. (R. at 30-31). Specifically, the ALJ found that plaintiff could work as a pricer/marker/tagger/labeler, an assembler of small products, and a packer. (R. at 29). Because the ALJ concluded that plaintiff is capable of making a successful adjustment to other work, she determined that plaintiff is not disabled. (R. at 29-30). Plaintiff then filed the instant appeal.

The Clerk of Court assigned plaintiff's appeal to Magistrate Judge Martin C. Carlson for an R&R. Magistrate Judge Carlson recommends

10

granting plaintiff's appeal, vacating the defendant's decision denying plaintiff benefits, and remanding this matter for a new ALJ hearing. (Doc. 17). Specifically, Magistrate Judge Carlson determined that the ALJ's RFC, while detailed, conflicted with the medical source opinion of plaintiff's treating physician, and therefore, recommended that this case be remanded for further consideration and reconciliation of the medical evidence.

The defendant objects to Magistrate Judge Carlson's R&R, asserting that an ALJ may determine an RFC without relying on medical expert testimony. The plaintiff counters that an ALJ may not reject a treating source medical opinion with only lay interpretation of medical evidence. After a careful review, we agree with the plaintiff.

The Social Security Regulations provide that "medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Treating physicians, examining physicians, and non-examining physicians may provide medical opinions.

11

20 C.F.R. § 404.1527(c)(1)-(2). The Regulations provide special deference to medical opinions from treating sources who have "seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment" ("treating source rule"). 20 C.F.R. § 404.1527(c)(2).

The treating source's opinion is entitled to controlling weight, however, "only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . .'"[6] Johnson, 529 F.3d at 202 (quoting 20 C.F.R. § 404.1527(c)(2)). When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

---

[6] When a treating source's opinion is not entitled to controlling weight, it is evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency, and specialization. See 20 C.F.R. § 404.1527(c)(2). An ALJ need not defer to a treating physician's opinion about the ultimate issue of disability because that determination is an administrative finding reserved to the Commissioner. See 20 C.F.R. § 404.1527(d).

In choosing to reject the evaluation of a treating physician, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinions outright only on the basis of contradictory medical evidence. Id. at 317 (citations omitted). An ALJ may not reject a written medical opinion of a treating physician based on his or her own credibility judgments, speculation, or lay opinion. Id. An ALJ may not disregard the medical opinion of a treating physician based solely on his or her own "amorphous impressions, gleaned from the record and from his evaluation of the [claimant]'s credibility." Id. at 318 (citation omitted).

The court recognizes that the ALJ's RFC must be based on a consideration of all the evidence in the record, including the testimony of the claimant regarding her activities of daily living, medical records, lay evidence, and evidence of pain. See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121-22 (3d Cir. 2000). Only on rare occasions can an ALJ's residual functional capacity determination be made without an assessment from a physician regarding the claimant's functional abilities. See Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986) (stating that "no physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the

13

ALJ's conclusion that he could is not supported by substantial evidence."). An ALJ cannot speculate a claimant's RFC but must have medical evidence, and generally a medical opinion regarding the functional capabilities of the claimant, supporting their determination.  See Tilton v. Colvin, 184 F. Supp. 3d 135, 146-47 (MD. Pa. 2016); Ennis v. Astrue, No. 4:11-CV-1788, 2013 WL 74375, at *7 (M.D. Pa. Jan. 4, 2013); Gunder v. Astrue, No. 4:11-CV-300, 2012 WL 511936, at *14-16 (M.D. Pa. Feb. 15, 2012).[7]

In the instant matter, plaintiff's treating physician, Dr. Kraynak, treated plaintiff on a monthly basis for over ten (10) years.  (R. at 336).  Dr. Kraynak noted that plaintiff suffers from bilateral carpal tunnel syndrome, severe degenerative disease of the cervical spine, lumbosacral spine

---

[7] In Gunder, Judge Richard Conaboy reconciled the case of Chandler v. Comm'r of Soc. Sec., 667 F.3d. 356, 361-63 (3d Cir. 2011) with Doak v. Heckler, 790 F.2d 26, 29 (3d Cir.1986) stating that:
> Any argument from the Commissioner that his administrative law judges can set the residual function capacity in the absence of medical opinion or evidence must be rejected in light of Doak.  Furthermore, any statement in Chandler which conflicts (or arguably conflicts) with Doak is dicta and must be disregarded. See Government of Virgin Islands v. Mills, 634 F.3d 746, 750 (3d Cir. 2011) (holding that a three member panel of the Court of Appeals cannot set aside or overrule a precedential opinion of a prior three member panel).

Gunder, 2012 WL 511936 at *15.

14

disease, major anxiety disorder, and Raynaud's Syndrome.  (R. at 537-41, 605, 609).  Based on his extensive treatment history with plaintiff, Dr. Kraynak opined that plaintiff is <u>limited</u> in her ability to perform the following work related activities: (1) lifting less than ten (10) pounds occasionally; and (2) sitting, standing, and walking for a combined total of less than eight (8) hours per workday.  (R. at 336-37, 529-31).  Dr. Kraynak also noted that plaintiff is <u>severely limited</u> with respect to reaching, handling, and using her fingers.  (<u>Id.</u>)

     The ALJ assigned "little weight" to Dr. Kraynak's medical opinion, noting only that Dr. Kraynak's "treatment notes lack any significant objective physical examination findings to support such significant limitation."  (R. at 27).  In making this finding, however, the ALJ interpreted Dr. Kraynak's treatment notes in a vacuum instead of observing the totality of plaintiff's medical condition and treatments.  Stated differently, at the same time Dr. Kraynak observed plaintiff on a monthly basis for over ten (10) years, Dr. Kraynak also had <u>all information provided to him by other medical sources, as well as radiographic records which he ordered</u>.  (R. at 370, 376-81, 386, 396, 403, 409, 424, 443, 462, 465-66).  Thus, the ALJ's lay opinion that Dr. Kraynak's treatment notes lack any significant objective

15

physical examination findings to support plaintiff's limitations is an inappropriate ground to disregard the opinion of plaintiff's treating physician.  See Plummer, 186 F.3d at 429 (holding that an ALJ may not evaluate medical evidence based on her own lay opinion).

**Conclusion**

For the above-stated reasons, we find that substantial evidence does not support the ALJ's decision denying plaintiff's applications for disability insurance and supplemental security income benefits.  Thus, we will overrule the defendant's objection, adopt the R&R, vacate the defendant's decision, and remand for a new hearing.  An appropriate order follows.

Date:   03/31/2017            s/ James M. Munley
                                             **JUDGE JAMES M. MUNLEY**
                                             **United States District Court**